IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CR161-1 |
| | ) | |
| JOHNNY REID EDWARDS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter came on for hearing on March 15, 2012, to address the Court's concerns about a potential conflict of interest and to hear Motions to Withdraw filed by James P. Cooney III, Claire Rauscher, and Womble Carlyle Sandridge and Rice LLP. (Doc. 181 and Doc. 182.) The Court took evidence and considered matters of record, including memoranda filed by the parties. At the close of the hearing, the Court granted the motions filed by Mr. Cooney and Ms. Rauscher and allowed the defendant to proceed with counsel of his choice, despite the potential conflict of interest. This Memorandum Opinion will more fully set forth the Court's consideration of the relevant issues.

FACTS

The defendant Mr. Edwards was indicted on June 3, 2011, for six counts of campaign finance law violations and related offenses. Mr. Edwards was initially represented by various attorneys with Skadden, Arps, Slate, Meagher & Flom, LLP, by Wade M. Smith, and by Mr. Cooney. On August 3, Abbe D. Lowell filed a Notice of Appearance for Mr. Edwards, and in

September the attorneys with Skadden, Arps were allowed to withdraw. Mr. Smith was allowed to withdraw in October. Ms. Rauscher entered an appearance for Mr. Edwards in October.

The case has moved through preliminary motions and several continuances, and is presently scheduled for trial on April 12, 2012. Shortly after the last hearing at which this trial date was selected, Allison Van Laningham and Alan W. Duncan with the firm Smith Moore Leatherwood LLP entered appearances for the defendant. A few days later, Mr. Cooney and Ms. Rauscher moved to withdraw.

Until recently, Ms. Van Laningham and Mr. Duncan represented Rielle Hunter in a civil case pending in Orange County Superior Court in which she sued Andrew and Cheri Young. This civil case was recently settled. While Ms. Van Laningham and Mr. Duncan have not yet withdrawn, they are no longer representing Ms. Hunter in that matter and Ms. Hunter's interests are being handled by Wade Barber, co-counsel who is not connected with Smith Moore Leatherwood. Ms. Van Laningham and Mr. Duncan also appeared on Ms. Hunter's behalf in a related proceeding in this court concerning subpoenas to federal prosecutors issued in the state court action. *See United States v. Hunter*, No. 1:11-MC-51 (M.D.N.C.).

Ms. Hunter, Mr. Young, and Ms. Young are all potential witnesses at Mr. Edwards' trial. Mr. Young, "Person A" in the indictment, is virtually certain to testify, and it seems likely that Ms. Young will testify. Ms. Hunter is "Person B" in the indictment. It is not known for certain whether Ms. Hunter will be called to testify by either the Government or the defense. The prospect is neither likely nor remote.

Ms. Hunter testified before the grand jury in 2009 in connection with the investigation of Mr. Edwards, after entering into an agreement with the Government that her testimony and other statements would not be used against her. She has always been represented by Michael

Critchley, Sr. in connection with the criminal investigation. She has not been charged with any crimes, and the Government does not expect to charge her with any campaign finance law violations.

The core dispute underlying the charged offenses is whether Mr. Edwards knowingly and willfully received illegal contributions from Rachel Mellon and Fred Baron during his campaign for President of the United States. The Government alleges that this money was used to hide Ms. Hunter's affair with Mr. Edwards and a resulting pregnancy so that Mr. Edwards could continue his presidential campaign.

The Government expects that if called as a witness, Ms. Hunter would testify that she was a participant in the affair, which spanned the duration of Mr. Edwards' official campaign for President, and that she would acknowledge cash spent and benefits conferred (to include medical care, living and travel expenses, furniture, and clothing) as the result of Mr. Edwards' and others' efforts to support and conceal her, the affair, and the pregnancy from the media. She would further testify about many conversations with Mr. Edwards during this time, which included discussions about her living situation and support.

The Government contends that the jury would be able to infer from this testimony that Mr. Edwards was aware of and condoned the actions taken by others to solicit or provide the money and support. It seems her testimony will be relevant to the questions of motive, intent, willfulness, and membership in the charged conspiracy.

The defense generally does not dispute that Ms. Hunter would testify along these lines, but disputes the inferences to be drawn from her testimony. The defense has seen the transcripts of Ms. Hunter's testimony before the grand jury and is familiar with other statements she has made. The defense contends, without contradiction by the Government, that Ms. Hunter's

statements have been consistent over time and that she has not said nor is she likely to say that Mr. Edwards admitted or committed any element of the charged offenses. The defense is of the view that her testimony will support inferences in favor of Mr. Edwards and will in fact generally be consistent with the defense theory of the case.

In the state court civil case, Ms. Hunter sued Mr. and Ms. Young for various torts, which claims generally arose over ownership and possession of various pieces of personal property. The time frame of the relevant events in that civil case is the same as the time frame in this criminal case, and the facts arose out of the same relationships between Ms. Hunter, Mr. Young, and Ms. Young that will be relevant in this case. Specifically it appears that Mr. Young will testify in this case concerning his receipt of money and other items of value which he used to support and travel with Ms. Hunter. It further appears the property dispute in the civil case arose when this arrangement came to an end. Thus, there is substantial factual overlap between the two cases.

Ms. Hunter has signed a written waiver confirming that Mr. Duncan and Ms. Van Laningham no longer represent her in the civil case and that she is separately represented in connection with the criminal case. She states her view that there is no conflict of interest raised by their representation of Mr. Edwards, waives any actual or potential conflicts of interest if they do exist, and consents to their representation of Mr. Edwards.

In open court, Mr. Edwards testified under oath that he understood the nature of the potential conflict and the unpredictability of how that potential conflict might affect him. He testified that he had consulted privately with Mr. Lowell and other independent counsel about the potential conflict. He waived any conflict of interest and stated his affirmative wish that Mr. Duncan and Ms. Van Laningham represent him.

Mr. Lowell confirmed that he had spoken privately with Mr. Edwards about the nature and extent of any conflict of interest. He also stated that he would continue to represent Mr. Edwards, that he was able to cross-examine Ms. Hunter himself with no reservations or conflicts,[1] and that he would be available and prepared to handle Mr. Edwards' defense on his own should Mr. Duncan's and Ms. Van Laningham's past representation of Ms. Hunter cause unexpected problems in the future that required their withdrawal or limited their role at trial.

Ms. Van Laningham and her firm consulted the North Carolina State Bar and independent counsel concerning their ethical obligations to Ms. Hunter and potential obligations to Mr. Edwards before accepting representation of Mr. Edwards. Only after concluding that there were no ethical problems under the North Carolina Rules of Professional Conduct and after fully discussing the potential conflict issues with both Mr. Edwards and Ms. Hunter did they enter an appearance for Mr. Edwards.

## LAW

A defendant has a right under the Sixth Amendment to conflict-free legal representation. *Mickens v. Taylor*, 240 F.3d 348, 355 (4th Cir. 2001) (en banc). While the Sixth Amendment encompasses a defendant's general right to retain the attorney of his choice, the essential aim of the Sixth Amendment's right to counsel is to ensure an effective advocate for all criminal defendants. *Wheat v. United States*, 486 U.S. 153, 159 (1988). Thus, "[a] District Court must recognize a presumption in favor of [a defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164.

---

[1] Mr. Lowell had some contact with Ms. Hunter during the course of the investigation, but the Court previously determined that contact did not give rise to an actual or potential conflict of interest.

When a district court becomes aware of the possibility of a defense attorney's conflict of interest, it has a threshold obligation to conduct an inquiry. *Mickens*, 240 F.3d at 358 ("[T]rial courts have an obligation to inquire into potential conflicts of interest when they know or reasonably should know of a particular conflict."); *accord, United States v. Tatum*, 943 F.2d 370, 379 (4th Cir. 1991); *United States v. Akinseye*, 802 F.2d 740, 744 (4th Cir. 1986). "A district court has an obligation to foresee problems over representation that might arise at trial and head them off beforehand." *United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997).

If the Court determines that defense counsel has an actual or potential conflict, the Court must determine whether the conflict is so severe as to disqualify the attorney, or is a lesser conflict that can be waived by the defendant at a hearing. *Wheat*, 486 U.S. at 160-161; *Akinseye*, 802 F.2d at 745. To be valid, any such waiver must be knowing, intelligent, and voluntary. *United States v. Brown*, 202 F.3d 691, 697 (4th Cir. 2000); *Akinseye*, 802 F.2d at 744-45. While the degree of information the defendant needs before making such a waiver may vary somewhat depending on the circumstances, *Brown* at 697-98, it is generally good practice to "provide the defendant with as much relevant information as possible about the conflict before the court accepts a waiver of the conflict of interest." *Id.* The defendant need not, however, be told every detail concerning a conflict. *Id.*

The defendant's right to the lawyer of his choice is not absolute, and the Court is not required to accept a defendant's valid waiver of his lawyer's conflict of interest. *See United States v. Urutyan*, 564 F.3d 679, 686 (4th Cir. 2009); *United States v. Basham*, 561 F.3d 302, 323 (4th Cir. 2009); *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996). The courts have an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair." *Wheat*, 486 U.S. at 160.

Because "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict," the court has "substantial latitude" in refusing waivers of conflicts "when a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 162-63.

ANALYSIS

All the evidence before the court indicates that at present there is no substantial actual conflict of interest. Mr. Edwards' and Ms. Hunter's interests do not necessarily conflict; they are not co-defendants with differing levels or responsibility, nor is Ms. Hunter facing criminal prosecution for the underlying events. *Cf. Tatum*, 943 F.2d at 376-378 (reversing conviction where lawyer's representation of two defendants resulted in a "fog of torn and conflicting loyalties"). Ms. Van Laningham and Mr. Duncan are reputable attorneys with long track records in the Middle District, and there is no reason to doubt their evaluation that the interests of Ms. Hunter and Mr. Edwards are not materially adverse. *See* North Carolina Rules of Professional Conduct, Rule 1.9. This is especially so since independent counsel and the State Bar have been consulted. *See Mickens,* 240 F.3d at 357 (noting counsel's ethical duty to evaluate conflicts of interest and fully inform the court). Mr. Edwards and Ms. Hunter, each of whom has or has had the opportunity to consult independent counsel, see no conflict. Thus, as best the Court can tell without undue and inappropriate inquiry into privileged matters, no current actual conflict exists.

Certainly there are other concerns, even if Ms. Hunter does not testify. Ms. Hunter's name, actions, and relationship to Mr. Edwards will feature prominently during the trial, as the Government alleges it was the desire to hide Ms. Hunter, her affair with Mr. Edwards, and her pregnancy that gave rise to criminal conduct. Should the past relationship between Ms. Hunter and Mr. Edwards' lawyers for some reason come to the jury's attention during the trial, there is a

7

real possibility for confusion of issues, unwarranted inferences, and waste of time. It is not difficult to think of scenarios which would not benefit Mr. Edwards' defense. These kinds of potential problems, however, do not necessarily arise from nor are they created by a conflict of interest.

However, if Ms. Hunter testifies at trial, there is a real possibility of a conflict of interest. While it seems at this stage that her interests and Mr. Edwards' interests are not materially adverse, it is still highly likely that at least some of her testimony will have a negative effect on Mr. Edwards' defense and it may well be that his lawyers will need to impeach her testimony, at least in part. *See Wheat,* 486 U.S. at 163 ("a few bits of unforeseen testimony" can quickly shift the relationships at issue). His attorneys would need to cross-examine her carefully and zealously, which could cause a problem if the attorneys cross-examining her were, just a few short weeks earlier, her own lawyers in a matter with substantial factual overlap. The duty of loyalty would obviously be at issue, and there is the potential for a concern over the duty of confidentiality. *See* North Carolina Rules of Professional Conduct, Rule 1.9.

Even if Ms. Hunter does not testify, there are conflict risks, though the foreseeable ones are quite small at this stage. It is possible, for example, that Ms. Hunter's privacy interests, which she has sought to protect by filing a lawsuit in state court, will come to be inconsistent with Mr. Edwards' defense, even if she doesn't testify. While it is difficult to predict exactly how this might happen and it doesn't seem particularly likely, it doesn't take much of a leap of the imagination to envision it occurring in some way. This could raise a conflict of interest.

The Court concludes there is a real possibility of an actual conflict of interest between Mr. Edwards' interests and Ms. Hunter's interests. It is not, however, a conflict so severe as to automatically disqualify Mr. Duncan and Ms. Van Laningham. This is not the kind of

representation which by its very nature is impermissible; as noted above, Mr. Edwards' and Ms. Hunter's interests are not facially incompatible or competing.  Moreover, it is not a conflict which absolutely and definitely will arise at trial; rather, it is possible that the potential conflict may never arise and, even if it does, it may cause no problems at all.

Ms. Hunter and Mr. Edwards have each waived this conflict of interest.  Ms. Hunter's written waiver is detailed and reflects that she has had the opportunity to consult other attorneys.  She is represented by two other lawyers, Mr. Barber in the civil case and Mr. Critchley in criminal matters.  She appears to be aware that if she waives this conflict, she will have to live with the consequences.

Mr. Edwards is fully informed about the possibility of a conflict of interest arising.  He has consulted with Mr. Lowell and with another independent attorney about the conflict of interest issue.  He is aware that it can be difficult to predict how a conflict might arise or exactly how it could hurt his defense.  He is aware that if he waives this conflict, he will have to live with the consequences.  While he is taking a number of medicines, he is not impaired by those medicines or otherwise in his decision-making abilities, and he was coherent, rational, and thoughtful in his responses to the Court's questions.  He is a lawyer with professional experience and knowledge outside this case of how conflicts of interest arise.

The Court concludes that Mr. Edwards and Ms. Hunter have each waived the potential conflict of interest resulting from the appearance of Mr. Duncan and Ms. Van Laningham as counsel for Mr. Edwards.  Mr. Edwards' waiver is freely, voluntarily, and knowingly made.

The final question is whether, despite the waiver, the Court should preclude the defendant from representation by counsel of choice.  Because the Court concludes that the conflict most
9

likely to arise can be managed in ways short of disqualification, the Court will not disqualify counsel but rather will impose other limitations to protect the integrity of the proceedings.

Mr. Lowell is also counsel of record for Mr. Edwards and is fully able and willing to cross-examine Ms. Hunter, should she testify. This would reduce the possibility of any conflict of interest negatively affecting the fairness or integrity of the trial. Mr. Lowell has no conflict as to Ms. Hunter, he has been involved in the defense of this case for months, and he has proven himself to be an able and zealous advocate. The defense does not object to this limitation on Mr. Duncan's and Ms. Van Laningham's roles.

Other steps may also be appropriate. Based on this and on other issues raised in the course of pretrial proceedings, the Court is considering ways to avoid confusion, undue delay, and waste of time which could result from the unnecessary mentioning of lawyers' names before the jury in connection with underlying factual matters. The Court is considering whether to prohibit any attorney or witness from mentioning the name of any non-witness lawyer regarding any historical/factual matter in the presence of the jury, absent advance permission of the Court. The Court appreciates there may be some witnesses as to whom this may not be feasible in a particular instance, or that the parameters might need to be adjusted; it seems likely, however, that a general rule along these lines might reduce distractions during trial. Counsel should discuss this between and among themselves and be prepared to discuss this suggestion, or other ideas which would serve the same purpose, with the Court at the next pretrial hearing date.

It is therefore **ORDERED** that:

1. The Notice of Appearance of Allison Van Laningham and the Notice of Appearance of Alan W. Duncan are accepted. The Court previously signed Orders allowing Mr. Cooney and Ms. Rauscher to withdraw.

2. Cross-examination of Rielle Hunter at trial, should she testify, shall be undertaken by Abbe D. Lowell.

3. Ms. Van Laningham and Mr. Duncan shall seek permission of the Superior Court to withdraw from the Orange County case and shall advise the Court when that is accomplished.

4. At the March 26 hearing, counsel shall be prepared to discuss ways to minimize confusing and unnecessary references to lawyers during the trial.

This the 21st day of March, 2012.

_____
UNITED STATES DISTRICT JUDGE